UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 12 B 01108 |
| | ) | Chapter 13 |
| DAWN MARIE SORI, | ) | Judge Donald R. Cassling |
| | ) | |
| Debtor. | ) | |

MEMORANDUM OPINION

This matter comes before the Court on the motion of Dawn Marie Sori (the "Debtor") for sanctions against the Illinois Department of Employment Security ("IDES") and Assistant Illinois Attorney General Jill Kolinski ("Ms. Kolinski") for violation of the automatic stay under 11 U.S.C. § 362(k)(1). IDES determined through investigation that the Debtor fraudulently sought and received unemployment benefits for which she was ineligible. IDES notified the Debtor of the fraud determination and demanded repayment of those benefits. When she failed to repay, IDES filed a criminal complaint against her and she was arrested. In response, the Debtor filed this motion seeking to hold both IDES and Ms. Kolinski in contempt for violation of the automatic stay. The Court finds that the conduct of both IDES and Ms. Kolinski is excepted from the automatic stay under 11 U.S.C. § 362(b)(1) and (b)(4). As a result, the Court denies the Debtor's motion.

I. JURISDICTION

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FACTS AND BACKGROUND

On April 19, 2011, IDES issued a Notice of Audit informing the Debtor that IDES was reviewing unemployment benefits that she had received for the period of April 3, 2010 through September 25, 2010. (IDES Agreed Statement, Ex. A.) On December 8, 2011, IDES issued a Notice of Fraud Decision finding that the Debtor "knowingly made false statements or failed to disclose material facts for the purposes of receiving these benefits for which you were not eligible" resulting in overpayments in the sum of $7,058. (IDES Agreed Statement, Ex. B.) The Notice of Fraud Decision demanded repayment of that sum. (*Id.*)

The Debtor filed this voluntary Chapter 13 petition on January 13, 2012. On January 19, 2012, IDES processed a $125 credit card payment from the Debtor, reducing her outstanding obligation on the December 8, 2011 Notice of Fraud Decision to $6,933, for which amount IDES filed a timely proof of claim (Claim No. 1-1) on January 26, 2012. (Mot., Ex. C.) IDES received actual notice of the Debtor's bankruptcy filing, and the debt owed to IDES is provided for in the Debtor's plan, which was confirmed without objection by IDES on March 23, 2012. (*Id.*, Ex. B.)

On April 25, 2012, IDES issued a second Notice of Audit to the Debtor finding that for the period of October 2, 2010 through April 16, 2011, she had fraudulently obtained unemployment benefits for which she was ineligible in the amount of $12,274. (IDES Agreed Statement, Ex. C.) This finding was reiterated in a Notice of Fraud Decision issued on May 9, 2012, which again demanded repayment. (IDES Agreed Statement, Ex. D.) IDES did not amend its proof of claim to include this $12,274 amount.

On January 30, 2014, the Illinois Attorney General, by Ms. Kolinski, filed a criminal complaint[1] against the Debtor in the Circuit Court of DuPage County, alleging that the Debtor fraudulently obtained unemployment benefits in the amount of $19,332, as determined by IDES's December 8, 2011 and May 9, 2012 Fraud Decisions. IDES also obtained a warrant for the Debtor's arrest, requiring her to surrender and post bail of $1,000 by February 6, 2014.

According to the Debtor's bankruptcy counsel, after the criminal case was filed, he contacted IDES on February 5, 2014, seeking an explanation why James Gibbs, an investigator with the Illinois Attorney General's office ("Mr. Gibbs"), had repeatedly contacted the Debtor by telephone attempting to collect money owed to IDES. An IDES employee, Linda Belton, denied to the Debtor's counsel that there had been any such collection efforts. Ms. Belton stated that she did not know of any ongoing collection efforts nor was she aware that the Attorney General had filed a criminal complaint against the Debtor. Ms. Belton confirmed with her supervisor that there was no record of any ongoing collections efforts by IDES.

Also on February 5, 2014, the Debtor's counsel contacted Ms. Kolinski, who was handling the criminal complaint. She confirmed that collection efforts had been ongoing for over eight months after the Debtor filed the bankruptcy petition. She further told the Debtor's counsel that IDES had been assessing the Debtor interest and penalty fees from the date of the bankruptcy filing, bringing the Debtor's total obligation to IDES to $19,300. Ms. Kolinski also informed the Debtor's counsel that the Debtor needed to post the $1,000 bail or she would remain in jail until her arraignment.

On April 21, 2014, IDES sent the Debtor a Payment Receipt that acknowledged a payment from the Debtor of $116.91, and stated that "[a]s of 04/18/2014 your outstanding Unemployment Insurance overpayment balance is $0.00." (Reply to Mot., Ex. A.)

---

[1] The Court was not furnished a copy of this complaint.

3

The Debtor claims that IDES's post-petition conduct violates the automatic stay. IDES argues that its actions are excepted from application of the automatic stay by 11 U.S.C. § 362(b)(1) and (b)(4). The parties waived an opportunity for an evidentiary hearing and asked the Court to decide the matter based on the pleadings.

### III. APPLICABLE STANDARDS

#### A. Violation of the Automatic Stay

The filing of a bankruptcy case operates as a stay against the commencement of a judicial proceeding against the debtor that could have been brought before the case was filed. 11 U.S.C. § 362(a)(1). The bankruptcy filing also stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case...[.]" 11 U.S.C. § 362(a)(6).

When a creditor violates the automatic stay, 11 U.S.C. § 362(k)(1) provides a remedy for the debtor to recover her damages and states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). In order to recover damages under § 362(k)(1) for violation of the automatic stay, a debtor must establish, by a preponderance of the evidence, that: (1) a bankruptcy petition was filed; (2) the debtor is an individual under the automatic stay provision; (3) the creditor had notice of the petition; (4) the creditor's actions were in willful violation of the stay; and (5) the debtor suffered damages. *In re Gossett*, 369 B.R. 362, 375 (Bankr. N.D. Ill. 2007).[2]

---

[2] IDES argues that the relief requested by the Debtor in this motion cannot be granted because procedurally she should have filed an adversary proceeding. *See In re Rimsat, Ltd.*, 208 B.R. 910, 913 (Bankr. N.D. Ind. 1997). The Court rejects this argument and will follow the cases that hold that damages requested for a stay violation may be recovered by motion as a contested matter under Federal Rule of Bankruptcy Procedure 9014. *See Standard Indus., Inc. v. Acquila, Inc. (In re C.W. Mining Co.)*, 625 F.3d 1240, 1246 (10th Cir. 2010) (finding that because Fed. R. Bankr. P. 9020 provides that Bankruptcy Rule 9014 governs a contempt motion, a debtor may pursue a stay violation by contempt motion and need not file an adversary proceeding); *Buckeye Check Cashing, Inc. v. Meadows (In re Meadows)*, 396 B.R. 485, 498 (B.A.P. 6th Cir. 2008) (stating that actions brought to recover damages for stay violations are brought by motion, with attorney's fees expressly allowed under § 362(k)); *Johnson v. RJM*

4

A debtor must prove that the creditor's violation of the stay was willful. *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699, 708 (7th Cir. 2009). A violation of the stay is willful if the creditor (1) had actual notice of the bankruptcy filing and (2) commits a deliberate act when it violated the stay. *In re Radcliffe*, 563 F.3d 627, 631 (7th Cir. 2009). A willful violation does not require a finding of specific intent of the creditor to violate the stay, but the court must find that the creditor's actions were intentional. *Johnson*, 2012 WL 930386, at *9. In order for a debtor to recover actual damages for a willful violation of the stay, she must show the amount of damages with reasonable certainty. *In re Wilke*, No. 10 B 04976, 2010 WL 2034525, at *5 (Bankr. N.D. Ill. May 20, 2010).

The parties do not dispute that a bankruptcy petition was filed; that the Debtor is an individual; or that IDES had notice of the bankruptcy. The parties dispute whether IDES's actions were taken in willful violation of the stay. IDES contends that its actions and the actions of its agents did not violate the automatic stay because they were exempt under § 362(b)(1) and (b)(4).

### B. Exceptions to the Automatic Stay

There are many exceptions to the automatic stay. One is found in § 362(b)(1), which states that the filing of a petition does not operate as a stay "of the commencement or continuation of a criminal action or proceeding against the debtor[.]" 11 U.S.C. § 362(b)(1). The legislative history of § 362(b)(1) states that "the first exception [to the automatic stay] is of criminal proceedings against the debtor. The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over-extension. Thus criminal actions

---

*Acquisitions, LLC*, No. 11-CV-601-WDS, 2012 WL 930386, at *5 (S.D. Ill. Mar. 19, 2012) (noting that a motion for sanctions under § 362(h), which was redesignated as § 362(k) in 2005, is a contested matter governed by Bankruptcy Rule 9014); *Patton v. Shade*, 263 B.R. 861, 865 (C.D. Ill. 2001) (same); *In re Ballard*, 502 B.R. 311, 313-23 (Bankr. S.D. Ohio 2013) (same).

and proceedings may proceed in spite of bankruptcy." H.R. Rep. No. 595, 95th Cong., 1st Sess. at 342 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. at 51 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299, 5787, 5837.

Courts disagree as to whether § 362(b)(1) is an absolute exception or whether it excludes bad-faith criminal prosecutions or attempts to collect a pre-petition debt. The Seventh Circuit has not addressed this issue. The majority of courts have held that the exception in § 362(b)(1) is absolute regardless of prosecutorial purpose or alleged bad faith. *See Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1086 (9th Cir. 2000); *Simonini v. Bell (In re Simonini)*, 69 Fed. Appx. 169, 170-71 (4th Cir. 2003); *Bartel v. Walsh (In re Bartel)*, 404 B.R. 584, 590 (B.A.P. 1st Cir. 2009); *Rollins v. Campbell (In re Rollins)*, 243 B.R. 540, 547-48 (N.D. Ga. 1997); *Dunn v. Advantage Windows, Inc. (In re Dunn)*, Bankr. No. 12-13450, Adv. No. 12-1092, 2013 WL 1091737, at *7 (Bankr. E.D. Tenn. Jan. 29, 2013); *Tow v. Henley (In re Henley)*, 480 B.R. 708, 805-06 (Bankr. S.D. Tex. 2012); *Dennison v. Davis (In re Dennison)*, 321 B.R. 378, 383-84 (Bankr. D.Conn. 2005); *Pickett v. Quinn (In re Pickett)*, 321 B.R. 663, 668-69 (Bankr. D.Vt. 2005). According to this view, § 362(b)(1) is a "clear and straightforward declaration" that the filing of a bankruptcy petition does not operate as an automatic stay of criminal prosecutions of a debtor, with "no hint of any exception for prosecutorial purpose or bad faith." *Bartel*, 404 B.R. at 590. Thus, a criminal proceeding is not subject to the stay even when it relates to the collection of a debt or where a debtor alleges that the proceeding is brought in bad faith. *Id.*

The minority interpretation of § 362(b)(1) focuses on the motive behind the criminal prosecution and refuses to apply the exception when the primary motivation is the collection of a debt. *See Legendary Stone Arts, LLC v. Maness (In re Maness)*, 497 B.R. 326, 330 (B.A.P. 8th

Cir. 2013); *In re Caravona*, 347 B.R. 259, 266 (Bankr. N.D. Ohio 2006); *Batt v. Am. Rent–All (In re Batt)*, 322 B.R. 776, 779-80 (Bankr. N.D. Ohio 2005); *Dovell v. Guernsey Bank (In re Dovell)*, 311 B.R. 492, 494 (Bankr. S.D. Ohio 2004). This judicial exception looks at the principal purpose of the criminal proceedings. If the creditor's primary motive was to collect a debt, then the conduct is proscribed by § 362(a). *Dorsey v. Prokos Check Cashing*, 373 B.R. 528, 532 (Bankr. N.D. Ohio 2007). If, on the other hand, the primary motive of the creditor is a desire to see that the debtor is punished for violating a criminal law, then the creditor's actions will be viewed as falling within the scope of the criminal exception under § 362(b)(1). *Id.*

Another exception to the automatic stay is found in § 362(b)(4), which exempts from the stay "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power[.]" 11 U.S.C. § 362(b)(4). The legislative history speaks to the scope of this exception:

> [W]here a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.

S. Rep. No. 989, 95th Cong., 2d Sess. at 52 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838.

This exception has been construed narrowly to apply only to the enforcement of state laws affecting health, welfare, morals, and safety. *Cash Currency Exchange, Inc. v. Shine (In re Cash Currency Exchange, Inc.)*, 762 F.2d 542, 555 (7th Cir. 1985). In order to determine whether a governmental action falls within the § 362(b)(4) exception, courts have employed two

7

tests: the "pecuniary purpose" test and the "public policy" test, which have been defined as follows:

> Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety [or public policy]. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate public policy are excepted from the stay.

*Chao v. BDK Indus., L.L.C.*, 296 B.R. 165, 167-68 (C.D. Ill. 2003) (quoting *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 385-86 (6th Cir. 2001)).[3]

## IV. DISCUSSION

### A. IDES and Ms. Kolinski's Actions Are Excepted From the Stay Under § 362(b)(1)

In support of her argument that IDES was engaged in an attempt to collect a debt, the Debtor states that after she filed her bankruptcy petition, Mr. Gibbs telephoned her and said that they needed to meet in a public place to discuss her debt to IDES. According to the Debtor, Mr. Gibbs threatened that a warrant would be issued for her arrest if she did not meet with him. In May 2013, Mr. Gibbs, in his capacity as an agent for IDES, appeared at the Debtor's place of employment and asked to question the Debtor.

The Court finds that, even if the foregoing facts were deemed established, it would not affect the outcome in this case, because, after examining the language of § 362(b)(1) and reviewing the numerous decisions on this issue, the Court finds the reasoning of the majority view to be persuasive. The Court will apply the unambiguous language of the statute to except

---

[3] The Seventh Circuit has not adopted these tests, but several district courts in this Circuit have applied the tests. *Solis v. Wallis*, No. 11 C 3019, 2012 WL 3779065, at *6 (N.D. Ill. Aug. 30, 2012); *Solis v. Caro*, No. 11 C 6884, 2012 WL 1230824, at *3-5 (N.D. Ill. Apr. 12, 2012).

all criminal proceedings from the automatic stay regardless of the purpose for which the proceeding was brought. The Court agrees that § 362(b)(1) is "a clear and straightforward declaration" that excepts all criminal prosecutions of the debtor from the stay with "no hint of any exception for prosecutorial purpose or bad faith." *Bartel*, 404 B.R. at 590. Because the plain language of § 362(b)(1) does not provide an exception for prosecutorial misconduct or bad faith, the Court will apply the statute as written and declines to read a judicially-created exception into the statute. *See Gruntz*, 202 F.3d at 1085 (stating that a motivation exception should not be read into § 362(b)(1) because such a reading would ignore the plain meaning of the statute); *see also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (stating that where a statutory command in the Bankruptcy Code is clear, the statute should be enforced according to its terms).

This result is also more consistent with the Supreme Court's admonition "against 'federal interference with state criminal prosecutions.'" *Kelly v. Robinson*, 479 U.S. 36, 47 (1986) (quoting *Younger v. Harris*, 401 U.S. 37, 46 (1971)). Prosecuting authorities are in the best position to determine whether "a criminal action against a debtor is undertaken to vindicate the public interest; it is not the place of the bankruptcy court to interfere with said actions. . . ." *Bartel*, 404 B.R. at 592 (internal quotation omitted). In addition, "[t]he right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States." *Kelly*, 479 U.S. at 47. Finally, courts have found that reading the § 362(b)(1) exception without a bad faith or motive exception is consistent with the legislative goals of affording relief to financially distressed debtors and not providing a shelter from the consequences of criminal actions. *Bartel*, 404 B.R. at 591.

In a case factually similar to the situation at bar, a court had to determine whether the criminal prosecution of a debtor for fraudulent receipt of unemployment benefits violated the stay. *Smith v. Goode (In re Smith)*, 301 B.R. 96 (Bankr. M.D. Ga. 2003). The debtor listed the Georgia Department of Labor as an unsecured creditor in the amount of $4,313 and proposed a Chapter 13 plan that paid all unsecured creditors in full. *Id.* at 99. The Georgia Department of Labor filed a claim, but because that claim indicated "notice only" and not the amount of the claim, the court disallowed the claim. *Id.* After the claim was disallowed, the debtor was incarcerated on a criminal warrant and indicted by a grand jury for fraudulently obtaining unemployment benefits. *Id.*

The court found that regardless of the purpose for which the criminal action was initiated, the actions of the Georgia Department of Labor and its agents did not violate the automatic stay. *Id.* at 100. The court stated that § 362(b)(1) "has been broadly interpreted to encompass all criminal proceedings, regardless of their purpose, i.e., criminal cases commenced solely to collect a debt are unaffected by the automatic stay." *Id.*; *see also Perry v. Jones (In re Perry)*, 314 B.R. 873, 875 (Bankr. M.D. Ga. 2004) (finding that criminal prosecution of contractor/debtor for his misapplication of payment he received from property owners did not violate the stay).

The Court also rejects the Debtor's argument that the actions taken by IDES and by agents of the Illinois Attorney General prior to the filing of the criminal action on January 30, 2014, should be found to be violative of the stay. "The right to commence a criminal action is meaningless unless it extends to performance of the conditions precedent thereto." *Schake v. County of Buffalo, Neb. (In re Schake)*, 154 B.R. 270, 274 (Bankr. D. Neb. 1993). Indeed, the actions of a governmental unit that are reasonably related to the institution of a criminal

complaint will not violate the stay. *Id.* The § 362(b)(1) exception "covers, from start to finish, all of the parts or proceedings that constitute a criminal action." *Davis v. Ill. State Police Fed. Credit Union (In re Davis)*, 244 B.R. 776, 790 (Bankr. N.D. Ill. 2000). Therefore, the actions of IDES and the Illinois Attorney General and its agents with respect to the investigation of the Debtor prior to the actual filing of the criminal complaint and subsequent thereto fall within this exception to the stay.

The Court also finds that the requirement that the Debtor post $1,000 bail in order to be released from jail falls within the § 362(b)(1) exception. "The fresh start afforded debtors in bankruptcy does not include release from jail." *Gruntz*, 202 F.3d at 1087. *See also United States v. Colasuonno*, 697 F.3d 164, 174 (2d Cir. 2012) (stating that § 362(b)(1) "unambiguously signals Congress's intent to exempt all parts of the process aimed at punishing a defendant for criminal conduct from any interruption by the Bankruptcy Code's automatic stay").

Because IDES did not violate the automatic stay, the Court will not order IDES to cease all collection efforts against the Debtor, nor will it order the Illinois Attorney General to dismiss the criminal proceeding.

Even if the Court were to follow the minority position and examine the motive of IDES in bringing the criminal action against the Debtor, the Court finds that the Debtor has failed to prove that the primary motive was to collect a pre-petition debt or that IDES or Ms. Kolinski acted in bad faith. In fact, the Payment Receipt sent to the Debtor on April 21, 2014 showed that the overpayment balance was $0.00. This document supports IDES's position that its motive was not the collection of a pre-petition debt.

It would be the Debtor's burden, under the minority view, to demonstrate that IDES was proceeding in bad faith or that its fundamental purpose was to collect a debt. *See Dorsey*, 373

B.R. at 532. The Debtor passed up the opportunity to meet that burden when she waived her opportunity for an evidentiary hearing. As a result of that waiver, the Debtor introduced no evidence regarding the motive of IDES or Ms. Kolinski. Because the Debtor has failed to establish that either IDES or Ms. Kolinski acted in bad faith or that their primary motive was to collect a pre-petition debt, the Court finds that their actions are excepted from the automatic stay even under the narrower interpretation of § 362(b)(1).

### B. IDES and Ms. Kolinski's Actions Are Also Excepted From the Stay Under § 362(b)(4)

The Court also finds that any actions taken by the IDES or its agents and affiliates were excepted from the stay under § 362(b)(4). IDES, through the Illinois Attorney General, sued the Debtor for fraudulently obtaining unemployment benefits. The criminal proceeding brought against the Debtor here is precisely the type of action contemplated by this exception because it is meant to protect the integrity of the unemployment insurance system by deterring the filing of false claims for unemployment benefits. *See In re Adamic,* 291 B.R. 175, 188-89 (Bankr. D. Colo. 2003) (finding that state agency did not violate the stay by recouping fraudulently obtained pre-petition overpayments by withholding post-petition unemployment benefits). IDES argues that in conjunction with the Illinois Attorney General's Office, it regularly prosecutes offenders, like the Debtor, in order to protect the interest of the people of the State of Illinois. IDES points to a press release from Illinois Attorney General Lisa Madigan stating that "[p]rosecuting these cases deters fraud and maintains the resources of the unemployment insurance program to help those people it is intended to assist—the unemployed." Illinois Attorney General, Lisa Madigan, *IDES Crack Down on Unemployment Fraud,* (Mar. 13, 2014), http://www.illinoisattorneygeneral.gov/pressroom/2014_03/20140313b.html.

As previously stated, the Debtor offered no evidence that IDES acted solely to protect its pecuniary interest in the Debtor's property. By contrast, the Court finds that IDES has made a sufficient showing to support a finding that the actions taken by IDES and Ms. Kolinski against the Debtor were primarily for the purpose of protecting the public. As a result, the Court finds that the actions of IDES and its agents fall within the parameters of § 362(b)(4) because those actions satisfy both the pecuniary purpose test and the public policy test.

## V. CONCLUSION

For the foregoing reasons, the Court denies the Debtor's motion for sanctions against IDES and Ms. Kolinski under § 362(k)(1).

A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: July 29, 2014

**Donald R. Cassling**
**United States Bankruptcy Judge**